

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **EDWARD AUGUSTUS BLOUNT, IV** | § | Case No. 09-90510 |
| xxx-xx-7752 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

## MEMORANDUM OF DECISION

The Court has heard and considered the "Trustee's Motion for Accounting and

Turnover of Funds by Debtor" filed by the duly-appointed and acting Chapter 7 Trustee

in the above-referenced bankruptcy case, Daniel J. Goldberg.  The Trustee seeks a

determination that certain distributions totaling approximately $47,750 that were received

by the Debtor, Edward Augustus Blount, IV, during the 180-day period following the

petition date constitute property of the bankruptcy estate under 11 U.S.C. §541(a)(5)(A).

Following an evidentiary hearing, the Court took the matter under advisement. This

memorandum of decision disposes of all issues pending before the Court.[1]

### Factual and Procedural Background

On or about March 11, 1988, Debtor's father, Edward Augustus Blount, III, as

settlor ("Settlor"), created an *inter vivos* trust known as the Edward's Children's Trust

(the "Children's Trust") for the future support and benefit of the Blount children and their

families.  The trust agreement appointed the three oldest children as the original trustees

---

[1]  This Court has jurisdiction to consider the motion pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (E), and (O).

of the Trust with the remaining children joining the trust committee as trustees once they

reached twenty-one years of age.  The Settlor's stated intent in the trust agreement was to

create an irrevocable trust and to vest total discretion with the named trustees as to

distributions of both the income and the corpus of the trust.  It was not self-settled in any

way.  Contemporaneously with its creation, the Children's Trust was funded through the

conveyance of certain real property interests consisting primarily of oil, gas, and mineral

rights.

Mr. Blount, III died on July 28, 1994, leaving a last will and testament dated May

30, 1990.  That will was admitted to probate on November 8, 1995 with the Debtor's

sister, Elizabeth, appointed as independent executrix.  The will established a trust to

facilitate the transfer, or pourover, of the Settlor's remaining assets into the original

Children's Trust to be governed according to the terms of that *inter vivos* trust.   The Will

specifically provided as follows:

> 13.  It is my will and intent that any property not bequeathed heretofore in
> my Trust Agreement filed of record in Vol 695, Page 711, Real Property
> Records of Nacogdoches County, Texas, shall upon my death vest in said
> Trust upon said terms as heretofore set out in said Trust Agreement.  It is
> my intent that all properties shall be merged into the said TRUST as one
> TRUST.[2]

Most of those remaining assets again consisted of mineral leases located in and

around Nacogdoches County.  That pourover was quickly accomplished by the Executrix

---

[2]  Debtor's Ex. B at p. 5 (emphasis in original).

and all of the assets conveyed by both instruments have been administered through the

Children's Trust since 1995.[3]  Most of the monthly mineral runs are conveyed to the

beneficiaries, with a couple of thousand dollars left as a residuary on a monthly basis.  In

2009, approximately $400,000 was distributed from the Trust.  Because the Debtor is the

only co-trustee located in the general vicinity of Nacogdoches, he procures monthly

checks to the beneficiaries from the Trust's accountant and signs them as the authorizing

trustee.  The other co-trustees have authorized an additional fiduciary fee to be paid to the

Debtor for his active management of the Trust and its assets on their behalf.

Despite periodic distributions from the Children's Trust, the Debtor's financial

condition weakened during the fourteen years following his father's death, culminating in

the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on

December 30, 2009.  In the schedules filed contemporaneously with the petition for relief,

the Debtor disclosed that he was a beneficiary of the "Edward Children's Spendthrift

Trust."[4]  All documents related to the Trust and its activities were disclosed to the

---

[3]  Debtor's Ex. G.

[4]  See Debtor's Schedule B, item #20.  It is uncontested in this proceeding that the Children's
Trust constitutes a valid spendthrift trust under Texas law, thereby restricting the ability of each trust
beneficiary to voluntarily or involuntarily alienate his or her right to future payments of the corpus and
income and protecting the Trust assets from creditor action. *See* TEX. PROP. CODE § 112.035 (Vernon
2010); *Bank of Dallas v. Republic Nat'l Bank of Dallas*, 540 S.W.2d 499, 501 (Tex. Civ. App. — Waco
1976, writ ref'd n.r.e).  *Hines v. Sands*, 312 S.W.2d 275, 278 (Tex. Civ. App. — Fort Worth 1958, no
writ), *In re Brooks*, 60 B.R. 155, 159 (Bankr. N.D. Tex.1986).

The bankruptcy ramifications of this type of protection is significant.  Section 541(c)(2) of the
Bankruptcy Code excludes from the scope of property of the estate trusts with restrictions on the transfer
of a beneficial interest of a debtor to the extent that such restriction is enforceable under applicable
nonbankruptcy law.  *See generally*, *Moser v. Bank of Texas (In re Chambers)*, 384 B.R. 460, 465 (Bankr.
E.D. Tex. 2008).  Courts generally turn, though not exclusively, to state law to find the applicable

Trustee.

After subsequent investigation and disclosure, the Chapter 7 Trustee filed his

motion for turnover on July 22, 2010, alleging Debtor had received approximately

$45,750 in distributions from the Children's Trust in the 180-day period following the

filing of the Debtor's bankruptcy petition.  The Trustee contends that, because the

distributions in question arise from the merger of an *inter vivos* trust and a testamentary

trust, those distributions are testamentary in nature and would qualify as "bequests" for

purposes of 541(a)(5)(A).  Alternatively, the Trustee argues that the distinction between

trust types, testamentary or *inter vivos*, is irrelevant in this circuit and that distributions

from either type within the 180-day period must be surrendered as property of the

bankruptcy estate.[5]  The Debtor objects to any proposed surrender on the ground that any

and all distributions from the Children's Trust should be treated as payments received

from a valid, *inter vivos* trust that is protected from the reach of creditors by a valid

spendthrift clause and not as the result of any bequest, devise, or inheritance from a

testamentary disposition.[6]

---

nonbankruptcy law.  *Patterson v. Shumate*, 504 U.S. 753, 758 (1992).  In this context, it is well-settled
that Texas courts recognize the validity of spendthrift clauses except in cases where the settlor establishes
a trust for his own benefit, a situation neither alleged nor proved in this case.  *Bank of Dallas,* 540 S.W.2d
at 501 (citing *Hines*, 312 S.W.2d at 278).  Because the parties have not raised this issue, the Court will
assume, without deciding, that the Children's Trust qualifies for spendthrift status under state law.

[5] *Trustee's Motion* at 2.

[6] *Debtor's Response* at 1-2.

**Discussion**

Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property" at the commencement of a case under any chapter of Title 11.[7] That scope is broadened further by §541(a)(5) to include several specifically-enumerated categories of property interests "that the debtor acquires or becomes entitled to acquire within 180 days" of the bankruptcy filing.[8] The Trustee's request for turnover of assets in this case stems from one such category: property acquired "by bequest, devise, or inheritance" under §541(a)(5)(A).[9] In

---

[7] 11 U.S.C. §541(a).

[8] 11 U.S.C. §541(a)(5)(A)-(C).

[9] 11 U.S.C. §541(a)(5)(A) includes within the scope of property of the estate —

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date —

(A) by bequest, devise or inheritance....

The Bankruptcy Code provides no definition of the terms "bequest," "devise" or "inheritance," thus requiring the Court to look to state law for a definition of those terms. *In re Ciano*, 433 B.R. 431, 435 (Bankr. N.D. Fla. 2010); *Zimmermann v. Spencer (In re Spencer),* 306 B.R. 328, 330-31 (Bankr. C.D. Cal. 2004); *In re Roth,* 289 B.R. 161, 166 (Bankr. D. Kan. 2003). The Texas Probate Code defines the term "devise" as follows:

"Devise," when used as a noun, includes a testamentary disposition of real or personal property, or of both. When used as a verb, "devise" means to dispose of real or personal property, or of both, by will.

TEX. PROBATE CODE §3(h) (Vernon 2003). Such an expansive definition may explain why the Texas Probate Code does not specifically define a "bequest" or an "inheritance." *See also*, *Hurt v. Smith*, 744 S.W.2d 1, 3 n.1 (Tex.1987) ["Although the old common law made a distinction between bequests, legacies and devises, we use the terms interchangeably..."].

determining whether the Debtor's acquisition of the Trust distributions in the post-

petition period meets that statutory definition, thereby rendering them as property of the

bankruptcy estate, two particular issues are raised: (1) whether the Children's Trust

remains as a purely *inter vivos* trust or was transformed into a testamentary trust by the

infusion of testamentary assets in the mid-1990s despite the Settlor's expressed wishes;

and (2) whether Fifth Circuit precedent demands the turnover of the post-petition

distributions from the Children's Trust as property of the estate under §541(a)(5)(A)

regardless of how it is characterized.

*Inter Vivos v. Testamentary Trust Distributions*

It is axiomatic that the Bankruptcy Code defers to state law in determining whether

a trust has been created and how such trust is to be characterized.[10]  For example, the

question of whether a trust contains a valid spendthrift clause,[11] or, as here, whether a

trust should be considered as *inter vivos* or testamentary in nature is governed by state

law.  The parties agree that the Children's Trust as it existed prior to the death of the

settlor was a valid *inter vivos* trust under Texas law.  All parties recognize that the

Settlor's Last Will and Testament mandated testamentary transfers of his remaining

property to the Edward's Children's Trust.  The initial matter under dispute surrounds the

---

[10] *Butner v. United States*, 440 U.S. 48, 55 (1979) [recognizing that property interests are created and defined by state law, and should not be analyzed differently in a bankruptcy proceeding unless mandated by "congressional command" or an "identifiable federal interest"].

[11] *Patterson*, 504 U.S. at 758.

effect, if any, of those transfers upon the existing *inter vivos* trust and whether the

character of the distributions that subsequently were dispersed from that single trust were

altered under Texas law by the infusion of additional assets from the Settlor's

testamentary trust.  Were those subsequent payments that the Debtor received in the post-

petition period and that are now sought by the Trustee distributions from an *inter vivos*

trust or a testamentary trust?

It is undisputed that the stated purpose of the decedent's Last Will and Testament

was to ensure that all of his remaining property would eventually be held as a component

of the corpus of the Children's Trust.[12]  The only pertinent question on this issue,

therefore, is whether the assets conveyed by testamentary disposition[13] to the trustees of

---

[12] The Settlor's Last Will and Testament appears to have created a second "stand-by" trust for his residuary estate even though such a trust need not necessarily have required the formalities of a will. *In re Estate of Canales*, 837 S.W.2d 662 (Tex. App. — San Antonio 1992, no writ). Further, according to §19 of the Restatement (Third) of Trusts:

> Where a will contains a testamentary disposition for the purpose of adding property to an irrevocable or revocable inter vivos trust, or for the purpose of funding a trust pursuant to the terms of an instrument of trust executed but not funded during the testator's lifetime, the intended disposition is effective if and as:
> > (a) provided by statute;
> > (b) validated by the doctrine of incorporation by reference or by the doctrine of facts of independent significance; or
> > (c) the trust instrument, together with the will, either
> > > (i) satisfies an applicable rule of substantial compliance, harmless error, or judicial dispensation, or
> > > (ii) otherwise satisfies the policies underlying the formal safeguards of the applicable Wills Act.

RESTATEMENT (THIRD) OF TRUSTS §19 (2003).

[13] The Court assumes without deciding that the transfer of all of the Settlor's property by operation of his Last Will and Testament qualifies as testamentary.  *See* TEX. PROB. CODE §58a and §59 (Vernon 2003).

the *inter vivos* trust retained any testamentary character upon their transfer or whether

such a transfer affected the *inter vivos* nature of the Children's Trust in any way.

Prior to the promulgation and adoption of the statutory solution described below,

courts followed two antipodal legal doctrines concerning the validity and nature of

testamentary additions to *inter vivos* trusts through a "pour-over" technique.[14]  The first

was known as the doctrine of incorporation by reference and "held that the terms of the

inter vivos trust became incorporated into the will by reference and became a part of it,

thus rendering the trust testamentary insofar as the gift was considered."[15]  The second

was known as the doctrine of independent significance wherein the *inter vivos* trust was

deemed to have retained its original character notwithstanding any testamentary

additions, and the testamentary assets were simply considered as additions to the *inter

vivos* trust corpus and administered according to its provisions.[16]  Under the first

approach, the receiving *inter vivos* trust was transformed by its absorption of the

testamentary additions, but under the second doctrine, its character remained unchanged

---

[14]  *See* Alan N. Polasky, *"Pour-Over Wills": Use with Inter Vivos Trusts*, 17 Sw L.J. 410 (1963) for the following general description of this technique:

> The concept of the "pour-over" is not difficult.  It is simply a dispositive provision which directs that all or part of an estate is to be added to the corpus of an existing trust, to be administered according to and without the necessity of reiteration of the terms of the trust.  The basic goal is to furnish a simple mechanism for adding the poured-over assets to the corpus of the existing trust in order to secure a unified administration of assets with whatever minimization of administrative expenses or detail is thus possible.

*Id.*

[15] *See generally,* V. Woerner, Annotation, *"Pour-over" Provisions from Will to Inter Vivos Trust*, 12 A.L.R.3D 56, 101-102, and cases discussed therein.

[16] *Id.*

by the testamentary dispositions.[17]

In an effort to address these differences and allow a testator to "pour-over" his testamentary assets into a previously established trust, the Uniform Testamentary Additions to Trusts Act was promulgated. The slightly non-uniform adoption of that Act in Texas in 1961, now codified in §58a of the Texas Probate Code, states that property "devised or bequeathed"[18] to an existing trust through a testamentary disposition "shall be added to the corpus of such trust to be administered as a part thereof and shall thereafter be governed by the terms and provisions of the instrument establishing such trust. . . ." TEX. PROB. CODE § 58a (Vernon 2003).[19]

The application of this provision is well-illustrated by the decision in *Brinker v. Wobaco Trust, Ltd.*, 610 S.W.2d 160, 165 (Tex. Civ. App.–Texarkana 1980, writ ref'd n.r.e). *Brinker* involved the characterization of an *inter vivos* trust established by Norman and Maureen Brinker during their marriage but which was primarily funded by interests transferred to the trust upon Maureen's death. *Id*. at 163. The Brinkers created the "Brinker Family Trust" for the benefit of the their two daughters, and Ms. Brinker directed in her will that her residuary estate would first go into a testamentary trust until

---

[17] There was no reported Texas decision adopting either approach prior to the adoption of the UTATA. Charles M. Prock, Note, *Devises or Bequests to Trustees — Pour-Over From a Will to Inter Vivos Trust*, 13 BAYLOR L. REV. 301, 306 (1961).

[18] *See supra* note 8.

[19] Interestingly, the Texas Legislature decided in 2009 to repeal the entire Texas Probate Code and enact the Estates Code at Acts 2009, 81st Leg., ch. 680, effective January 1, 2014. Obviously, at all times relevant to this case, the trusts and interests involved were governed by the stated sections of the Texas Probate Code.

the death of her mother and husband, and then pour-over into the existing Brinker Family

Trust. *Id*. at 164. Some time after Ms. Brinker passed away, however, her now-remarried

husband transferred assets out of the original Brinker Family Trust and into another entity

called the Wobaco Trust that was established for the benefit of his children from his

second marriage. The two daughters of Norman and Maureen, as the beneficiaries of the

Brinker Family Trust, challenged his actions based on the language of the trust itself,

which stated that the income of the trust shall be paid only to the "issue of settlor." The

daughters sought reformation of the Brinker Family Trust to include a limitation on the

phrase so that only the natural descendants of Norman and Maureen could benefit from

the pour-over of assets, not the progeny of his subsequent marriage.

The court in *Brinker* was required to determine the character of the Brinker Family

Trust after its receipt of the testamentary assets because, although Texas law did not

allow a testamentary disposition to be reformed,[20] it would permit the reformation of an

*inter vivos* trust in order to give effect to the original intent of the parties and correct

mistakes or prevent misinterpretations in the document.[21] Thus, the initial question

presented was whether the transfer of testamentary assets into the existing *inter vivos*

family trust pursuant to the pour-over provisions in Maureen Brinker's will had

---

[20] *See, e.g.*, *Jackson v. Templin*, 66 S.W.2d 666, 671 (Tex. Comm'n. App. 1933, judgm't adopted).

[21] *See, e.g., Ford v. Ford*, 492 S.W.2d 376, 377-378 (Tex. Civ. App. — Texarkana 1973, writ ref'd n.r.e.) [allowing for reformation of trust to create irrevocable trust based on parties' original intent]; also subsequently recognized in *Estate of Hearn v. Hearn*, 101 S.W.3d 657, 663 n. 5 (Tex. App.— Houston [1st Dist.] 2003, pet. denied).

**-10-**

transformed the *inter vivos* trust into a testamentary trust, thereby precluding its reformation.

Construing and applying §58a of the Texas Probate Code, the *Brinker* court determined that the Brinker Family Trust had retained its original status as an *inter vivos* trust and simply absorbed the later testamentary additions to its own corpus. *Id*. at 165.  It noted that the Uniform Testamentary Additions to Trusts Act "was designed to validate testamentary additions to trusts even though such trusts were amendable, and to prevent the trust provisions affecting such gift from becoming testamentary." *Id.*  Though it noted that the text of the Texas adoption is not identical to that in the Uniform Act, it concluded that "the intention of the Texas Act was that the trust provisions would not become testamentary by reason of such a gift, but that the gift would simply augment the corpus of the trust and become part of it." *Id.*

Pursuant to §58a of the Texas Probate Code as applied in *Brinker*, the Court concludes that the testamentary transfers from the Settlor's decedent's estate to his Children's Trust did not alter the character of the Children's Trust.  It is still to be considered an *inter vivos* trust for all purposes.  The Settlor's will performed the precise pour-over function for which it was created; thereby increasing the corpus of the Children's Trust to be distributed under the terms governing the same, with its status remaining unaltered.   Further, any supplementation of the corpus or any income or distributions derived from the enhanced trust corpus shall be considered as having originated from the *inter vivos* trust itself.  Thus, the distributions subsequently paid from

that trust to the Debtor in the post-petition period cannot be properly characterized as testamentary in nature under Texas law, but rather as distributions from an *inter vivos* trust.

B.     *Moody and §541(a)(5)(A).*

Having concluded that the Children's Trust, as enhanced by the testamentary dispositions, maintained its character as an *inter vivos* trust under Texas law rather than morphing into a testamentary trust, and that the distributions received by the Debtor are thereby properly characterized as *inter vivos* trust distributions, it would seem a necessary conclusion that those particular distributions by the Children's Trust to the Debtor could not fall under the auspices of §541(a)(5)(A) as a "bequest, devise, or inheritance" as defined by state law. *See, e.g., Birdsell v. Coumbe (In re Coumbe)*, 304 B.R. 378, 385 (B.A.P. 9th Cir. 2003); *In re Shurley*, 171 B.R. 769, 786 (Bankr.W.D. Tex.1994), *rev'd on other grounds,* 115 F.3d 333 (5th Cir.1997); *In re Schauer*, 246 B.R. 384, 388 (Bankr. D.N.D. 2000); *In re Crandall*, 173 B.R. 836, 839 (Bankr. D. Conn. 1994) [all concluding that *inter vivos* trust distributions are not property interests acquired "by bequest, devise, or inheritance"].

However, the Trustee asserts that such is not the prevailing law in the Fifth Circuit. He contends that, even if the distributions are properly characterized as *inter vivos* trust distributions, they still constitute "bequests" and that turnover of the funds is still mandated because they are property of the bankruptcy estate. The Trustee rests his

**-12-**

contention upon his interpretation of the Fifth Circuit decision in *Smith v. Moody (In re Moody)*, 837 F.2d 719 (5th Cir. 1988).   The Trustee argues that *Moody* erases any distinction between testamentary and *inter vivos* trusts for purposes of §541(a)(5)(A) and that *any* distribution from *any* trust of *any* kind within 180 days of the filing of a bankruptcy case "are similar enough to distributions by 'bequest, devise or inheritance' so as to be included in that definition."[22]  The Court believes that the Trustee's interpretation of *Moody* is overbroad, erroneous, and inconsistent with both state law and the Bankruptcy Code itself as interpreted by virtually all courts which have addressed the issue.

In *Moody*,  the debtor filed for bankruptcy and subsequently received approximately $77,151.99 in income distributions within the 180-day period of §541(a)(5) from a family trust established by his grandfather nearly fifty years previously.[23]  That family trust contained a spendthrift provision that had been previously deemed valid by both state and federal courts, which protected the trust from the reach of creditors and arguably insulated it from the scope of the bankruptcy estate under §541(c)(2).[24]

In affirming the decision of the United States District Court for the Southern District of Texas to grant the Chapter 11 Trustee 72 hours' notice of any proposed

---

[22]  *Trustee's Reply Brief* at p. 2.

[23] *Moody,* 837 F.2d at 720.

[24]  *Id.*

**-13-**

distribution of trust funds from the spendthrift trust (being curiously held by the *Moody National Bank*), the Circuit simply took due notice of the district court's ruling (which was not on appeal) that the required trust distributions that had been made within the 180-day window following the filing of the bankruptcy petition, and had been received and spent by the debtor, constituted property of his bankruptcy estate pursuant to 11 U.S.C. §541(a)(5)(A) despite the spendthrift provisions of the trust and §541(c)(2).  As background to its affirmance of the notice requirement, the Circuit made the following observation:

> The exclusion of spendthrift trust income payments from a debtor's bankruptcy estate is tempered slightly by 11 U.S.C. §541(a)(5)(A).  Under that statutory provision, the income payments from a spendthrift trust which the beneficiary is entitled to receive or does receive within the 180 day period after the filing of the bankruptcy petition are brought into the bankruptcy estate."[25]

It annotated that broad statement by appending the following footnote: "Such trust income payments would qualify as 'bequests' under 11 U.S.C. §541(a)(5)(A)."[26]  This is the language upon which the Trustee in the present case relies in asserting that any trust distribution received by a debtor in the 180-day window of §541(a)(5)(A) becomes property of the bankruptcy estate and subject to turnover.

---

[25]  *Id*. at 723.

[26]  *Id*., n.12.

A close reading of *Moody* reveals that it was addressing a very narrow, defined

issue. The observations contained therein regarding the scope of §541(a)(5)(A) and its

interplay with the protection of spendthrift trusts under §541(c)(2)[27] constitutes dicta.

However, the greater question is whether it is inaccurate dicta. The Trustee essentially

claims that the Circuit has emasculated §541(c)(2) for any trust distribution rendered

within the 180-day window. This Court does not agree with that interpretation of *Moody*.

Because the characterizations of the trust distributions in *Moody* were not actually before

the panel, it was not necessary for its general observations about the circumstances to be

made with the greatest precision. Indeed, the opinion fails to identify whether the Moody

trust was testamentary in nature or was an *inter vivos* trust established during the life of

the debtor's grandfather. It simply was not germane to the issue actually before it —

unlike the issue in the present case — in which the protections provided by §541(c)(2)

very much depend upon that characterization. While the obscure characterizations found

in *Moody* are rendered explicable if a testamentary trust was involved, one cannot

confirm that speculation through the text of the opinion.[28]

If the Trustee's interpretation of *Moody* were to be adopted, it would have

significant policy consequences, not the least of which would be the evisceration of

---

[27] *See supra* note 3.

[28] Courts across the country recognized almost immediately that this latent and critical ambiguity makes *Moody* almost impossible to decipher. The Seventh Circuit, for example, lamented that *Moody* "did not make clear whether the trust at issue was created as a testamentary trust," but acknowledged that "[i]f the trust were created in a will it would be considered an inheritance or bequest." *Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1153 (7th Cir. 1990). Conversely, "income distributions derived from an *inter vivos* trust do not fit within" §541(a)(5)(A) and therefore escape "the pale of the 180-day dragnet." *Id.*

spendthrift protection in bankruptcy.  If all trust distributions occurring in the 180-day period, regardless of their source or nature, are subject to §541(a)(5)(A), then the protection sought to be afforded by §541(c)(2) evaporates.  Even the Fifth Circuit itself subsequently observed that *Moody* could be misinterpreted in such a way and it specifically repudiated such an intent.  In *Bass v. Denney (In re Bass)*, 171 F.3d 1016 (5th Cir. 1999), the Circuit noted that "the discrete facts and circumstances of *Moody* dictate that its holding and reasoning be limited to those unique and difficult facts for which its highly imaginative solution was crafted."  *Id.* at 1027.   It later stressed the importance of protecting the integrity of spendthrift trusts in the bankruptcy context.  It stated:

> We recently confirmed that the United States bankruptcy court is subject to the same strictures as are the courts of Texas when it comes to honoring the provisions of a discretionary spendthrift trust.  In *Shurley*,[29] we partially reversed the bankruptcy court to the extent it had declared portions of a spendthrift trust funded by the parents of the debtor to be property of his Chapter 7 estate.  In so doing, we announced that we were following the longstanding rule of Texas law that a settlor should be allowed to create a spendthrift trust that shields trust assets from the beneficiary's creditors. We emphasized that bankruptcy does not free federal courts to ignore the clear public policy of a state that makes sacrosanct the intentions of the settlor of a spendthrift trust.

*Id.* at 1029 (citations and internal quotations omitted).   The strong language utilized in *Bass* demonstrates that *Moody* cannot be properly cited for the absolute erosion of the general protections afforded by a spendthrift trust, particularly one in which the

---

[29] *Shurley v. Texas Commerce Bank (In re Shurley)*, 115 F.3d 333 (5th Cir. 1997).

distributions are discretionary, even when such distributions become the subject of a

bankruptcy court inquiry.

Additionally, the adoption of the Trustee's interpretation would eliminate any

distinction between *inter vivos* trusts and testamentary trusts under §541(a)(5)(A) — a

step that not only would again directly contradict Texas law,[30] but also would represent a

serious divergence from a substantial consensus that has developed through the years

regarding the scope of §541(a)(5)(A).  Virtually every court which has addressed the

issue has come to the same conclusion —  that testamentary trust distributions in the 180-

day window are "bequests" and therefore property of the estate under §541(a)(5)(A), but

that *inter vivos* trust distributions are neither. *See, e.g., Magill v. Newman (In re*

*Newman)*, 903 F.2d 1150, 1153 (7th Cir. 1990)*; Neuton v. Danning (In re Neuton)*, 922

F.2d 1379, 1384 (9th Cir. 1990); *Birdsell v. Coumbe (In re Coumbe)*, 304 B.R. 378, 384

(B.A.P. 9th Cir. 2003); *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 422 n.2 (B.A.P.

9th Cir. 1997); *In re Ciano*, 433 B.R. 431 (Bankr. N.D. Fla. 2010); *In re Roth*, 289 B.R.

161 (Bankr. D. Kan. 2003); *Richardson v. McCullough (In re McCullough)*, 255 B.R.

509, 520-21 (Bankr. D. R.I. 2001); *In re Schauer*, 246 B.R. 354, 387-88 (Bankr. D.N.D.

2000); *In re Gower*, 184 B.R. 163, 166 (Bankr. M.D. Fla. 1995); *York v. Kragness (In re*

*Kragness)*, 58 B.R. 939 (Bankr. D. Or. 1986); *Togut v. Hecht (In re Hecht)*, 54 B.R. 379,

---

[30] The Texas Property Code differentiates explicitly between an "inter vivos transfer" and a "testamentary transfer," and allows for each as a method of creating different trusts. *Compare* TEX. PROP. CODE §§ 112.001(2) and 112.001(3).

383-84 (Bankr. S.D.N.Y. 1985).[31]   Because the Trustee's characterization of *Moody* and

its implications are inconsistent with the express language of the Bankruptcy Code, at

odds with the accepted analysis of an overwhelming number of federal courts, and would

constitute a repudiation of long-established Texas precedents that the Circuit has

subsequently affirmed in the strongest terms, it must be rejected.[32]

## Conclusion

The Court therefore concludes that the distributions received by the Debtor from

the Children's Trust within 180 days of the filing of his bankruptcy petition are properly

characterized as distributions from an *inter vivos* trust that do not fall within the scope of

the bankruptcy estate pursuant to  §541(a)(5)(A) because they were not acquired through

a "bequest, devise, or inheritance" from a testamentary disposition as required by that

provision.  Those trust distributions are protected from the reach of creditors by the

existence of a valid spendthrift clause under Texas law that is enforceable pursuant to

§541(c)(2) and the Trustee is not entitled to the turnover of distributions received by the

Debtor in the post-petition period because they do not qualify as property of the estate

under §541(a).  The Trustee's Motion is accordingly denied.

---

[31] The Court could not locate a single case in which a court held that a distribution from an *inter vivos* trust constituted property of the estate as a "bequest, devise, or inheritance" under §541(a)(5)(A).

[32] This conclusion is not unique.  Both the Seventh and Ninth Circuits have cited *Moody* as valid authority on the issue of testamentary trusts, while reaching the opposite conclusion as to *inter vivos* trust distributions. *Newman*, 903 F.3d at 1153; *Neuton*, 922 F.2d at 1384 n. 6.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[33] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  An appropriate order shall be entered which is consistent with this opinion.

Signed on 10/15/2010

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[33]  To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.